### JOHN M. BELL *v.* ELIZABETH ROGERS, ET AL.

**Marriage—Effect on Wife's Property.**

A husband who receives an estate by his marriage is legally bound to pay the debts of his wife existing at the date of the marriage.

**Property of Married Woman.**

A married woman may give property to her mother with the consent of her husband.

**Consent of Husband.**

Where a wife is dangerously ill, and in view of a dissolution hands a note owned by her to her mother, and when her husband afterwards comes into the room, she tells him what she has done and he makes no reply, his silence under such circumstances will not be construed into a consent on his part to such gift.

APPEAL FROM BATH COURT OF COMMON PLEAS.

January 24, 1877.

OPINION BY JUDGE LINDSAY:

There is no doubt that John M. Bell received a considerable estate by his marriage, and that he is bound to pay the debts or liabilities of his wife to an extent greatly exceeding the amount of the note sued on, if there existed any such debts or liabilities at the time of his marriage. If the father of Bell's wife was indebted to the testatrix, Lydia L. Boyd, then Mrs. Bell was under legal obligations to satisfy such indebtedness, as the proof shows, because of the reception by her, as heir at law, of sufficient estate to enable her to discharge that obligation.

But Bell swears positively that when he and his wife executed the note to Mrs. Boyd, the latter told them each that the note was not to be collected, but was to be held to evidence the amount of the advancements with which Mrs. Bell was to be charged. This state-

ment accords with the material probabilities of the case, and at the very start it is doubtful whether the rebutting proof relied on by the appellees is sufficient to overcome the direct and positive evidence of Bell. If Bell was induced to execute the note to evidence an advancement, instead of a debt, the subsequent action of the testatrix in making her will could not create an enforceable liability upon his part. But we waive the further consideration of that question.

By the provisions of the will Mrs. Bell became entitled to this note, to be held and owned by her, strictly as separate estate, with power to dispose of it by will or otherwise. She did not attempt to dispose of it by will. Being separate estate, she was denied the power of disposing of it, either with or without the consent of her husband, by Sec. 17, Art. 4, Chap. 47, Rev. Stat., but was authorized to do so with the consent of the donor or his personal representative.

By the act of February 13, 1866 (Myer's Suppl. 738) the power of alienation was enlarged, the consent of the husband being sufficient when, as in this case, there was an express power in the will creating the estate. By the act of January 16, 1868 (I Sess. Act, 1867-8, p. 5), such estate was put upon the same footing, so far as the power of alienation was concerned, with general estate, when there was no intervening trustee, and no restriction on the power of alienation in the instrument creating the estate. Hence, under the law in force prior to December 1, 1873, Mrs. Bell had the legal right to give this note to her mother, either with the consent of the personal representative of her grandmother, or with the consent of her husband.

It is not averred in the petition, in this case, that the consent of the personal representative of the grandfather and testatrix was procured, at or before Mrs. Bell made the alleged gift. It is charged that John M. Bell, the husband, did give his consent, and this allegation Bell expressly denies.

The proof is, that after the note had been passed by Mrs. Bell to her mother, her husband came into the room, and she told him what she had done, and he made no reply, and from his silence we are asked to infer or imply his consent. It must be considered that at this time Mrs. Bell was dangerously ill, so much so that she was preparing for speedy dissolution, and that her friends entertained no hopes for her recovery, some of them expecting her to live not exceeding a day or two. Under such circumstances common humanity forbade the husband to deny, in open and express terms,

his consent to an act which she desired to consummate, however much he may have disapproved it.

He was not in a position in which good faith demanded that he should speak, and his silence cannot be made to so operate as to pass the title to estate to which he is entitled, as administrator and distributor of his deceased wife, to a mere volunteer. The law does not require a man to protect his legal rights by wounding the feelings and embittering the last moments of a dying wife. His silence under the circumstances was inconsistent with the supposed consent, and if it evidenced anything it was his disapproval of the gift.

We are of opinion that the appellees failed to make out their case. We therefore *reverse* the judgment of the court below and remand the cause with instructions to dismiss their petition.

*Reid & Stone, J. S. Hunt, W. H. Cord, for appellant.*

*V. B. Young, B. D. Lacy, for appellees.*